UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

ELVIS NATHANIEL CURTIS,
PRINCE ALBERT SYMONETTE,
RICCARDO ADOLPHUS DAVIS,
DARRIN ALEXANDER ROKER,
WILLIAM SIMEON,
  a/k/a "Harvey Smith,"
  a/k/a "William Jacques,"
  a/k/a "Romeo Russell,"
  a/k/a "Dario Rolle,"
THEODORE NATHANIEL ADDERLEY,
  a/k/a "Blue,"
JOSHUA McDONALD SCAVELLA,
  a/k/a "Cow,"
LORIELMO STEELE-POMARE,
  a/k/a "Steele,"
LUIS FERNANDO OROZCO-TORO,
DAVON REVION KHAIM ROLLE,
DARREN ARTHUR FERGUSON,
  a/k/a "Hubba,"
DOMONICK DELANCY, and
DONALD FREDERICK FERGUSON II,
  a/k/a "DJ,"
  a/k/a "Billy,"

                Defendants.

**SEALED INDICTMENT**

24 Cr.



24 CRIM 655

---

The Grand Jury charges:

## INTRODUCTION

1.  Since at least May 2021, drug traffickers have smuggled tons of cocaine through The Bahamas into the United States with the support and protection of corrupt Bahamian government officials, including high-ranking members of the Royal Bahamas Police Force ("RBPF"). As detailed below, these officials have, among other things, provided sensitive law

enforcement information to drug traffickers, protected them from investigation and arrest, and helped them with the logistics of moving massive shipments of cocaine through The Bahamas en route to distribution in the United States. Corrupt RBPF officials have, for example, provided warnings to cocaine traffickers when the Drug Enforcement Administration ("DEA") was carrying out operations in The Bahamas so that the traffickers could protect their cocaine shipments from interdiction and themselves from investigation and arrest.

2. With 700 islands extending hundreds of miles from the coast of Florida, The Bahamas—according to the U.S. Department of State—forms the "United States' 'third border,'" with "vast, disjointed territory, positioned between the southeast coast of Florida and the South America-Hispaniola trafficking vector," which "makes its waters appealing to transnational criminals smuggling illicit goods."[1] The northernmost Bahamian islands, for example, are less than 100 nautical miles from the Florida coast. Bimini Island, the closest point in The Bahamas to the mainland United States, is approximately 45 nautical miles from Miami, Florida, and Grand Bahama, the northernmost island of The Bahamas, is approximately 70 nautical miles from West Palm Beach, Florida. Thus, as U.S. law enforcement has continued its efforts to staunch the flow of cocaine transiting other, more traditional routes through Central America north to the United States, this proximity to the United States has made The Bahamas an increasingly valuable and important transshipment point for U.S.-bound cocaine.

3. The increase in cocaine flow through The Bahamas has been a direct result of drug-fueled corruption that has infected various Bahamian institutions. More specifically, since at least in or about May 2021, corrupt high-ranking members of the RBPF and other Bahamian

---

[1] U.S. Department of State, Bahamas, Bureau of International Narcotics and Law Enforcement Affairs, https://www.state.gov/the-bahamas/.

2

government officials have worked with Colombian and Bahamian drug traffickers to facilitate the receipt, protection, and safe passage of massive cocaine shipments through the airports and ports of The Bahamas. These corrupt RBPF and Bahamian government officials support the drug trade into the United States at every turn—from the airports, airstrips, and ports in the island chain that serve as points of entry for the cocaine shipments into The Bahamas, and onto maritime vessels that are then used to transit the cocaine through shipping routes from the northernmost points of The Bahamas and into the United States.

4. DEA officials operating in The Bahamas have historically coordinated law enforcement operations with the RBPF through a trilateral counternarcotics program called Operation Bahamas, Turks and Caicos, or "OPBAT." OPBAT was launched in 1982 and was designed to police drug-trafficking operations through 100,000 square miles of ocean in the Caribbean.

5. Although OPBAT missions regularly intercept cocaine and other drug shipments headed to the United States, those seizures pale in comparison to the scope of the drug trade through The Bahamas, which is in part enabled by corrupt RBPF and Bahamian officials. Instead, while nominally appearing to work in partnership with the DEA to stop the flow of cocaine to the United States, certain corrupt RBPF officials have abused OPBAT and their relationship with the DEA to disrupt law enforcement operations against select drug traffickers in The Bahamas. Among other things, corrupt RBPF officials have denied the DEA access to seized cocaine and related evidence, provided information to the DEA that was contradicted by aerial surveillance, and, on at least one occasion, informed a DEA agent that certain drug-trafficking targets were "off limits." Thus, while the OPBAT program has had a share of success, certain bad actors within the

RBPF have concurrently worked to stifle its progress and instead to protect and assist their chosen drug traffickers in profiting through the cocaine trade.

6.  Drug trafficking in The Bahamas, as enabled by corrupt RBPF and other Bahamian officials, occurs against the backdrop of rising crime rates in The Bahamas. On January 24, 2024, the U.S. Embassy in The Bahamas issued an advisory detailing that 18 homicides had occurred in Nassau, the capital of The Bahamas, since the beginning of 2024, citing retaliatory gang violence as the primary motive for the killings. Similarly, on January 26, 2024, the U.S. Department of State issued a travel advisory encouraging citizens to exercise increased caution when visiting The Bahamas due to rising crime rates and, specifically, warning about "gang-on-gang violence" and high homicide rates.

**THE DEFENDANTS**

7.  ELVIS NATHANIEL CURTIS, the defendant, is a Bahamian citizen and an RBPF Chief Superintendent who, at all times relevant to this Indictment, has overseen aviation operations for the RBPF. In his official capacity, CURTIS supervises airport locations throughout The Bahamas, including the Lynden Pindling International Airport in Nassau (the "Nassau Airport"), which is the largest airport in The Bahamas and the fourth busiest airport in the Caribbean. In exchange for cocaine-fueled bribes from drug traffickers and their confederates, CURTIS abuses his official position to facilitate the transportation of narcotics and drug-trafficking proceeds by, among other things, providing safe passage for the traffickers and their cocaine loads through the Nassau Airport and elsewhere in The Bahamas.

8.  PRINCE ALBERT SYMONETTE, the defendant, is a Bahamian citizen and an RBPF Sergeant. SYMONETTE works closely with ELVIS NATHANIEL CURTIS, the defendant, and Bahamian and Colombian drug traffickers, and abuses his official position to facilitate the transportation of narcotics and drug-trafficking proceeds via air and maritime routes

4

by, among other things, accepting bribes for streamlining customs clearance for aircraft transporting cocaine into The Bahamas.

9.  RICCARDO ADOLPHUS DAVIS, the defendant, is a Bahamian citizen and has purported to be an official in the Bahamian government. DAVIS uses his influence with corrupt Bahamian government officials to authorize drug trafficking facilitated by RBPF officials, among others.

10. DARRIN ALEXANDER ROKER, the defendant, is a Bahamian citizen and a Chief Petty Officer in the Royal Bahamas Defence Force ("RBDF"), which is the military of The Bahamas. ROKER facilitates maritime drug trafficking by using his official position to, among other things, obtain sensitive information about law enforcement operations by the U.S. Coast Guard and OPBAT and alert drug traffickers, in exchange for bribe payments.

11. WILLIAM SIMEON, a/k/a "Harvey Smith," a/k/a "William Jacques," a/k/a "Romeo Russell," a/k/a "Dario Rolle," the defendant, is a Bahamian citizen and a drug trafficker. SIMEON works closely with certain corrupt RBPF officials and others both to transport cocaine into The Bahamas (typically by air, from its point of origin in South America), and then to transport cocaine to the United States (typically by boat) for distribution.

12. THEODORE NATHANIEL ADDERLEY, a/k/a "Blue," the defendant, is a Bahamian citizen and a drug trafficker. ADDERLEY works closely with WILLIAM SIMEON, a/k/a "Harvey Smith," a/k/a "William Jacques," a/k/a "Romeo Russell," a/k/a "Dario Rolle," the defendant, multiple corrupt RBPF officials, and others, to transport cocaine into The Bahamas (typically by air, from its point of origin in South America), and then to transport cocaine to the United States (typically by boat) for distribution.

13. JOSHUA McDONALD SCAVELLA, a/k/a "Cow," the defendant, is a Bahamian citizen and a pilot who coordinates cocaine shipments from various other islands in the Caribbean into The Bahamas (typically by air), while also working for a Bahamian private charter flight company that offers services to Bahamian citizens and foreign tourists. SCAVELLA works closely with other drug traffickers such as WILLIAM SIMEON, a/k/a "Harvey Smith," a/k/a "William Jacques," a/k/a "Romeo Russell," a/k/a "Dario Rolle," and THEODORE NATHANIEL ADDERLEY, a/k/a "Blue," the defendants, among others, to receive, coordinate, and redistribute cocaine shipments.

14. LORIELMO STEELE-POMARE, a/k/a "Steele," the defendant, is a Colombian citizen and a narcotics broker who introduces Colombian and Bahamian drug traffickers so they can work together in distributing cocaine to the United States. STEELE-POMARE coordinates cocaine shipments (by air and maritime routes) and works closely with multiple corrupt RBPF officials, among others, in connection with his drug-trafficking activities.

15. LUIS FERNANDO OROZCO-TORO, the defendant, is a Colombian citizen and a drug trafficker who ships cocaine from South America to the United States via The Bahamas (by air and maritime routes). FERNANDO OROZCO-TORO and his Bahamian drug-trafficking partners, including DAVON REVION KHAIM ROLLE, the defendant, work closely with corrupt Bahamian government officials in connection with their drug-trafficking activities.

16. DAVON REVION KHAIM ROLLE, the defendant, is a Bahamian citizen and a maritime drug trafficker operating in Nassau, the capital of The Bahamas in New Providence, and Bimini Island. ROLLE facilitates cocaine smuggling from The Bahamas into the United States (typically by boat, including go-fast boats from Bimini to Miami, Florida). ROLLE works closely

6

with DARREN ARTHUR FERGUSON, a/k/a "Hubba," the defendant, among others, in connection with his drug-trafficking activities.

17. DARREN ARTHUR FERGUSON, a/k/a "Hubba," the defendant, is a Bahamian citizen who previously operated as a pilot for drug shipments and now operates as a middleman, or broker, for drug-trafficking activities in The Bahamas. FERGUSON was previously deported to The Bahamas after being convicted at trial in 2008 and sentenced to a 120-month term of imprisonment in the United States for his participation in a cocaine importation conspiracy, during which FERGUSON transported by air multiple tons of cocaine from Colombia through Jamaica and Haiti for delivery to the United States.

18. DOMONICK DELANCY, the defendant, is a Bahamian citizen and a pilot. DELANCY flies cocaine shipments from Venezuela, Colombia, and various islands in the Caribbean into The Bahamas. DELANCY has also, in addition to his drug-trafficking activities, worked for a Bahamian private charter flight company that offers services to Bahamian citizens and foreign tourists.

19. DONALD FREDERICK FERGUSON II, a/k/a "DJ," a/k/a "Billy" ("DJ FERGUSON"), the defendant, is a Bahamian citizen and a pilot who works closely with DOMONICK DELANCY, the defendant, and also carries drug proceeds (typically by air) to and from The Bahamas. Like JOSHUA McDONALD SCAVELLA, a/k/a "Cow," the defendant, and DELANCY, DJ FERGUSON has worked for a Bahamian private charter flight company that offers services to Bahamian citizens and foreign tourists.

## MEANS AND METHODS OF THE DRUG-TRAFFICKING CONSPIRACY ENABLED BY CORRUPT RBPF AND BAHAMIAN OFFICIALS

### *The Importation of Cocaine Into The Bahamas*

20.  In furtherance of the drug-trafficking conspiracy, which is enabled by certain corrupt RBPF and Bahamian officials, at various times between in or about May 2021 and the present, members of the conspiracy organized and executed their drug-trafficking activities, including as follows:

  a.  Since at least in or about May 2021, drug traffickers in The Bahamas, Colombia, and elsewhere have worked together to receive multi-ton loads of cocaine sent to The Bahamas from, among other places, Colombia and Venezuela. Cocaine-laden aircraft, including on U.S.-registered planes, are received at remote airstrips and at larger airports in The Bahamas under the supervision of corrupt RBPF officials who work with, and accept bribes from, the drug traffickers. Once the cocaine arrives in The Bahamas, drug traffickers transport the drugs to the United States using go-fast vessels, yachts, and fishing boats.

  b.  In order to achieve safe passage for the large cocaine shipments transiting The Bahamas, drug traffickers pay bribes to Bahamian law enforcement officials, including ELVIS NATHANIEL CURTIS, PRINCE ALBERT SYMONETTE, and DARRIN ALEXANDER ROKER, the defendants, among others, in exchange for secure access to ports and airports, access to law enforcement information, including intercepted radio communications, and protection from investigation and arrest, which enables these drug traffickers to evade detection by the DEA and other law enforcement authorities. For example, on or about October 18, 2023, CURTIS and SYMONETTE each accepted an approximately $10,000 cash bribe payment as a down payment for their assistance in what they understood to be a future 600-kilogram cocaine shipment to The Bahamas through the Nassau Airport, for eventual distribution to the United States.

8

c. The bribes paid by these traffickers ultimately benefit corrupt Bahamian government officials, including CURTIS, SYMONETTE, and ROKER, who authorize and approve the drug-trafficking activities, and abuse the power of the state to enable the receipt and safe passage of drug shipments through The Bahamas and into the United States.

d. In connection with discussions regarding drug and weapons trafficking in or about March 2024, SYMONETTE understood that he had facilitated the transportation of certain cocaine that originated with the Fuerzas Armadas Revolucionarias de Colombia, or, in English, the Revolutionary Armed Forces of Colombia (the "FARC"), and that a potential weapons transaction was to help the purported FARC members transport weapons from Florida into The Bahamas.

### *The Protection of the Cocaine Trafficking Operation by Armed Officers*

21. In maintaining security for the drug-trafficking conspiracy, as enabled by corrupt RBPF and Bahamian officials, members of the conspiracy use weapons to protect and further the drug traffickers' operations, including to:

a. authorize and facilitate the conspiracy's drug-trafficking activities, such as in or about September 2024, when ELVIS NATHANIEL CURTIS, the defendant, said that, in exchange for $2 million USD, a high-ranking Bahamian politician, whom CURTIS named, would authorize the assistance and involvement of Bahamian law enforcement officials—including armed RBPF officers—in facilitating and insuring cocaine shipments; and

b. accept payment for cocaine trafficking services, such as in or about May 2024, when LORIELMO STEELE-POMARE, a/k/a "Steele," the defendant, engaged in discussions about the possibility of importing cocaine from Colombia into The Bahamas in exchange for weapons.

22. ELVIS NATHANIEL CURTIS and PRINCE ALBERT SYMONETTE, the defendants, and at times other members of the conspiracy, carried and used firearms during and in connection with the conspiracy, including firearms they carried while wearing their RBPF uniforms and assisting and meeting with purported drug traffickers.

### *The Trafficking of Cocaine Into the United States*

23. The primary purpose of the drug-trafficking conspiracy, as enabled by corrupt RBPF and Bahamian officials, is to import massive quantities of cocaine into the United States.

24. The methods through which the conspiracy imports cocaine across the border into the United States include, for example, concealing the cocaine in go-fast boats and other maritime vessels that travel from Grand Bahama or Bimini Island to locations in the United States, including Florida. Members of the conspiracy consistently rely on the assistance of corrupt RBPF and other Bahamian officials, including DARRIN ALEXANDER ROKER, the defendant, an RBDF official with access to maritime routes and the ports. For example, on or about November 6, 2024, ROKER explained that he could provide individuals he understood to be drug traffickers seeking to transport large quantities of cocaine through The Bahamas and into the United States with information regarding the location of U.S. Coast Guard and RBDF vessels and advance warning of potential interdiction operations, and delay the arrival of RBDF cutters to allow traffickers to escape detection. In that same conversation, ROKER provided additional advice about how a drug smuggler could avoid interdiction while transiting through The Bahamas, including the type of boat to use and the operations of Bahamian customs officials.

### *The Movement of Drug-Trafficking Proceeds*

25. Members of the drug-trafficking conspiracy, as enabled by corrupt RBPF and Bahamian officials, rely on various schemes and methods to ensure that they ultimately receive

the lucrative proceeds generated from their cocaine trafficking activities through The Bahamas and into the United States, which they then reinvest back into those illicit activities. For example:

  a. RBPF officials, including ELVIS NATHANIEL CURTIS and PRINCE ALBERT SYMONETTE, the defendants, have engaged in extensive discussions regarding the use of their official positions to transport bulk currency—which represents proceeds from the sale of the conspiracy's cocaine in the United States—from Florida to The Bahamas, including by Bahamian government or military aircraft, in exchange for an approximately 10% commission.

  b. DAVON REVION KHAIM ROLLE and DONALD FREDERICK FERGUSON II, a/k/a "DJ," a/k/a "Billy," the defendants, engaged in negotiations to take payment for the importation of approximately 900 to 1,000 kilograms of cocaine through The Bahamas in the form of approximately 15% of the cocaine load, which they stated they and other members of the drug-trafficking conspiracy would then send to the United States for sale there, before repatriating the proceeds back to The Bahamas.

  c. CURTIS, SYMONETTE, and RICCARDO ADOLPHUS DAVIS, the defendant, planned a trip to the United States to receive approximately $1.5 million in U.S. currency, which would represent an advance payment on an agreed-upon at least approximately 500-kilogram load of cocaine to be imported through The Bahamas into the United States. For example, on or about October 7, 2024, SYMONETTE engaged in discussions regarding the logistics of the $1.5 million bulk currency transaction via videocall with another participant who was located in Manhattan.

26. The movement of drug-trafficking proceeds into and out of The Bahamas enables the members of the conspiracy to pay bribes to RBPF and other corrupt Bahamian government officials, including, among others, ELVIS NATHANIEL CURTIS, PRINCE ALBERT

SYMONETTE, RICCARDO ADOLPHUS DAVIS, and DARRIN ALEXANDER ROKER, the defendants, to facilitate their drug-trafficking activities and reap large profits from their cocaine sales in the United States while avoiding detection.

## STATUTORY ALLEGATIONS

### COUNT ONE
### (Cocaine Importation Conspiracy)

27. Paragraphs 1 through 26 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

28. From at least in or about May 2021, up to and including in or about November 2024, in the Southern District of New York, The Bahamas, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district, ELVIS NATHANIEL CURTIS, PRINCE ALBERT SYMONETTE, RICCARDO ADOLPHUS DAVIS, DARRIN ALEXANDER ROKER, WILLIAM SIMEON, a/k/a "Harvey Smith," a/k/a "William Jacques," a/k/a "Romeo Russell," a/k/a "Dario Rolle," THEODORE NATHANIEL ADDERLEY, a/k/a "Blue," JOSHUA McDONALD SCAVELLA, a/k/a "Cow," LORIELMO STEELE-POMARE, a/k/a "Steele," LUIS FERNANDO OROZCO-TORO, DAVON REVION KHAIM ROLLE, DARREN ARTHUR FERGUSON, a/k/a "Hubba," DOMONICK DELANCY, and DONALD FREDERICK FERGUSON II, a/k/a "DJ," a/k/a "Billy," the defendants, and others known and unknown, at least one of whom is expected to be first brought to and arrested in the Southern District of New York, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to violate the narcotics laws of the United States.

29. It was a part and an object of the conspiracy that ELVIS NATHANIEL CURTIS, PRINCE ALBERT SYMONETTE, RICCARDO ADOLPHUS DAVIS, DARRIN ALEXANDER ROKER, WILLIAM SIMEON, a/k/a "Harvey Smith," a/k/a "William Jacques," a/k/a "Romeo

Russell," a/k/a "Dario Rolle," THEODORE NATHANIEL ADDERLEY, a/k/a "Blue," JOSHUA McDONALD SCAVELLA, a/k/a "Cow," LORIELMO STEELE-POMARE, a/k/a "Steele," LUIS FERNANDO OROZCO-TORO, DAVON REVION KHAIM ROLLE, DARREN ARTHUR FERGUSON, a/k/a "Hubba," DOMONICK DELANCY, and DONALD FREDERICK FERGUSON II, a/k/a "DJ," a/k/a "Billy," the defendants, and others known and unknown, would and did import into the United States from a place outside thereof a controlled substance, in violation of Title 21, United States Code, Sections 952(a) and 960(a)(1).

30. It was further a part and an object of the conspiracy that ELVIS NATHANIEL CURTIS, PRINCE ALBERT SYMONETTE, RICCARDO ADOLPHUS DAVIS, DARRIN ALEXANDER ROKER, WILLIAM SIMEON, a/k/a "Harvey Smith," a/k/a "William Jacques," a/k/a "Romeo Russell," a/k/a "Dario Rolle," THEODORE NATHANIEL ADDERLEY, a/k/a "Blue," JOSHUA McDONALD SCAVELLA, a/k/a "Cow," LORIELMO STEELE-POMARE, a/k/a "Steele," LUIS FERNANDO OROZCO-TORO, DAVON REVION KHAIM ROLLE, DARREN ARTHUR FERGUSON, a/k/a "Hubba," DOMONICK DELANCY, and DONALD FREDERICK FERGUSON II, a/k/a "DJ," a/k/a "Billy," the defendants, and others known and unknown, would and did manufacture, distribute, and possess with intent to distribute a controlled substance, intending, knowing, and having reasonable cause to believe that such substance would be unlawfully imported into the United States and into waters within a distance of 12 miles of the coast of the United States, in violation of Title 21, United States Code, Sections 959(a) and 960(a)(3).

31. It was further a part and an object of the conspiracy that ELVIS NATHANIEL CURTIS, PRINCE ALBERT SYMONETTE, RICCARDO ADOLPHUS DAVIS, DARRIN ALEXANDER ROKER, WILLIAM SIMEON, a/k/a "Harvey Smith," a/k/a "William Jacques,"

a/k/a "Romeo Russell," a/k/a "Dario Rolle," THEODORE NATHANIEL ADDERLEY, a/k/a "Blue," JOSHUA McDONALD SCAVELLA, a/k/a "Cow," LORIELMO STEELE-POMARE, a/k/a "Steele," LUIS FERNANDO OROZCO-TORO, DAVON REVION KHAIM ROLLE, DARREN ARTHUR FERGUSON, a/k/a "Hubba," DOMONICK DELANCY, and DONALD FREDERICK FERGUSON II, a/k/a "DJ," a/k/a "Billy," the defendants, and others known and unknown, would and did, on board an aircraft registered in the United States, manufacture, distribute, and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Sections 959(c) and 960(a)(3).

32. The controlled substance that ELVIS NATHANIEL CURTIS, PRINCE ALBERT SYMONETTE, RICCARDO ADOLPHUS DAVIS, DARRIN ALEXANDER ROKER, WILLIAM SIMEON, a/k/a "Harvey Smith," a/k/a "William Jacques," a/k/a "Romeo Russell," a/k/a "Dario Rolle," THEODORE NATHANIEL ADDERLEY, a/k/a "Blue," JOSHUA McDONALD SCAVELLA, a/k/a "Cow," LORIELMO STEELE-POMARE, a/k/a "Steele," LUIS FERNANDO OROZCO-TORO, DAVON REVION KHAIM ROLLE, DARREN ARTHUR FERGUSON, a/k/a "Hubba," DOMONICK DELANCY, and DONALD FREDERICK FERGUSON II, a/k/a "DJ," a/k/a "Billy," the defendants, and others known and unknown, conspired to (i) import into the United States and into the customs territory of the United States from a place outside thereof, (ii) manufacture, distribute, and possess with intent to distribute, intending, knowing, and having reasonable cause to believe that such substance would be unlawfully imported into the United States and into waters within a distance of 12 miles of the coast of the United States, and (iii) manufacture, distribute, and possess with intent to distribute on board an aircraft registered in the United States, was five kilograms and more of mixtures and

14

substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 960(b)(1)(B).

(Title 21, United States Code, Section 963; and Title 18, United States Code, Section 3238.)

## COUNT TWO
### (Firearms Use, Carrying, and Possession)

The Grand Jury further charges:

33. Paragraphs 1 through 26 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

34. From at least in or about May 2021, up to and including in or about November 2024, in the Southern District of New York, The Bahamas, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district, ELVIS NATHANIEL CURTIS, PRINCE ALBERT SYMONETTE, RICCARDO ADOLPHUS DAVIS, DARRIN ALEXANDER ROKER, WILLIAM SIMEON, a/k/a "Harvey Smith," a/k/a "William Jacques," a/k/a "Romeo Russell," a/k/a "Dario Rolle," THEODORE NATHANIEL ADDERLEY, a/k/a "Blue," JOSHUA McDONALD SCAVELLA, a/k/a "Cow," LORIELMO STEELE-POMARE, a/k/a "Steele," LUIS FERNANDO OROZCO-TORO, DAVON REVION KHAIM ROLLE, DARREN ARTHUR FERGUSON, a/k/a "Hubba," DOMONICK DELANCY, and DONALD FREDERICK FERGUSON II, a/k/a "DJ," a/k/a "Billy," the defendants, at least one of whom is expected to be first brought to and arrested in the Southern District of New York, during and in relation to a drug-trafficking crime for which they may be prosecuted in a court of the United States, to wit, the offense charged in Count One of this Indictment, knowingly used and carried

15

firearms, and in furtherance of such crimes, knowingly possessed firearms, and aided and abetted the use, carrying, and possession of firearms.

(Title 18, United States Code, Sections 924(c)(1)(A), 3238, and 2.)

## COUNT THREE
### (Firearms Conspiracy)

The Grand Jury further charges:

35. Paragraphs 1 through 26 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

36. From at least in or about May 2021, up to and including at least in or about November 2024, in the Southern District of New York, The Bahamas, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular State or district, ELVIS NATHANIEL CURTIS, PRINCE ALBERT SYMONETTE, RICCARDO ADOLPHUS DAVIS, DARRIN ALEXANDER ROKER, WILLIAM SIMEON, a/k/a "Harvey Smith," a/k/a "William Jacques," a/k/a "Romeo Russell," a/k/a "Dario Rolle," THEODORE NATHANIEL ADDERLEY, a/k/a "Blue," JOSHUA McDONALD SCAVELLA, a/k/a "Cow," LORIELMO STEELE-POMARE, a/k/a "Steele," LUIS FERNANDO OROZCO-TORO, DAVON REVION KHAIM ROLLE, DARREN ARTHUR FERGUSON, a/k/a "Hubba," DOMONICK DELANCY, and DONALD FREDERICK FERGUSON II, a/k/a "DJ," a/k/a "Billy," the defendants, and others known and unknown, at least one of whom is expected to be first brought to and arrested in the Southern District of New York, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to commit an offense under Title 18, United States Code, Section 924(c).

37. It was a part and an object of the conspiracy that ELVIS NATHANIEL CURTIS, PRINCE ALBERT SYMONETTE, RICCARDO ADOLPHUS DAVIS, DARRIN ALEXANDER

16

ROKER, WILLIAM SIMEON, a/k/a "Harvey Smith," a/k/a "William Jacques," a/k/a "Romeo Russell," a/k/a "Dario Rolle," THEODORE NATHANIEL ADDERLEY, a/k/a "Blue," JOSHUA McDONALD SCAVELLA, a/k/a "Cow," LORIELMO STEELE-POMARE, a/k/a "Steele," LUIS FERNANDO OROZCO-TORO, DAVON REVION KHAIM ROLLE, DARREN ARTHUR FERGUSON, a/k/a "Hubba," DOMONICK DELANCY, and DONALD FREDERICK FERGUSON II, a/k/a "DJ," a/k/a "Billy," the defendants, and others known and unknown, during and in relation to a drug-trafficking crime for which they may be prosecuted in a court of the United States, to wit, the drug-trafficking crime charged in Count One of this Indictment, would and did knowingly use and carry firearms, and, in furtherance of such crimes, would and did knowingly possess such firearms.

(Title 18, United States Code, Sections 924(o) and 3238.)

## FORFEITURE ALLEGATIONS

38. As a result of committing the controlled substance offense charged in Count One of this Indictment, ELVIS NATHANIEL CURTIS, PRINCE ALBERT SYMONETTE, RICCARDO ADOLPHUS DAVIS, DARRIN ALEXANDER ROKER, WILLIAM SIMEON, a/k/a "Harvey Smith," a/k/a "William Jacques," a/k/a "Romeo Russell," a/k/a "Dario Rolle," THEODORE NATHANIEL ADDERLEY, a/k/a "Blue," JOSHUA McDONALD SCAVELLA, a/k/a "Cow," LORIELMO STEELE-POMARE, a/k/a "Steele," LUIS FERNANDO OROZCO-TORO, DAVON REVION KHAIM ROLLE, DARREN ARTHUR FERGUSON, a/k/a "Hubba," DOMONICK DELANCY, and DONALD FREDERICK FERGUSON II, a/k/a "DJ," a/k/a "Billy," the defendants, shall forfeit to the United States, pursuant to Title 21, United States Code, Sections 853 and 970, any and all property constituting, or derived from, any proceeds the defendants obtained, directly or indirectly, as a result of the offense, and any and all property used,

17

or intended to be used, in any manner or part, to commit, and to facilitate the commission of, the offense charged in Count One of this Indictment.

39. As a result of committing the firearms offenses charged in Counts Two and Three of this Indictment, ELVIS NATHANIEL CURTIS, PRINCE ALBERT SYMONETTE, RICCARDO ADOLPHUS DAVIS, DARRIN ALEXANDER ROKER, WILLIAM SIMEON, a/k/a "Harvey Smith," a/k/a "William Jacques," a/k/a "Romeo Russell," a/k/a "Dario Rolle," THEODORE NATHANIEL ADDERLEY, a/k/a "Blue," JOSHUA McDONALD SCAVELLA, a/k/a "Cow," LORIELMO STEELE-POMARE, a/k/a "Steele," LUIS FERNANDO OROZCO-TORO, DAVON REVION KHAIM ROLLE, DARREN ARTHUR FERGUSON, a/k/a "Hubba," DOMONICK DELANCY, and DONALD FREDERICK FERGUSON II, a/k/a "DJ," a/k/a "Billy," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d), all firearms and ammunition involved in and used in the commission of the offenses charged in Counts Two and Three of this Indictment.

Substitute Assets Provision

40. If any of the above-described forfeitable property, as a result of any act or omission of ELVIS NATHANIEL CURTIS, PRINCE ALBERT SYMONETTE, RICCARDO ADOLPHUS DAVIS, DARRIN ALEXANDER ROKER, WILLIAM SIMEON, a/k/a "Harvey Smith," a/k/a "William Jacques," a/k/a "Romeo Russell," a/k/a "Dario Rolle," THEODORE NATHANIEL ADDERLEY, a/k/a "Blue," JOSHUA McDONALD SCAVELLA, a/k/a "Cow," LORIELMO STEELE-POMARE, a/k/a "Steele," LUIS FERNANDO OROZCO-TORO, DAVON REVION KHAIM ROLLE, DARREN ARTHUR FERGUSON, a/k/a "Hubba," DOMONICK DELANCY, and DONALD FREDERICK FERGUSON II, a/k/a "DJ," a/k/a "Billy," the defendants:

    a.    cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Sections 853(p) and 970, and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

(Title 21, United States Code, Sections 853 and 970;
Title 18, United States Code, Sections 924(d) and 982; and
Title 28, United States Code, Section 2461(c).)

_____
FOREPERSON

_____
DAMIAN WILLIAMS
United States Attorney